## GEORGE W. MESERVE vs. EBEN BACON.

Suffolk. March 5. — Oct. 21, 1878. COLT & SOULE, JJ., absent.

A corporation, to which A. had mortgaged a lot of land, sold it, under a power con-
tained in the mortgage, to B., its treasurer, and conveyed the land to him by deed.
B., in fact, held the title on a naked trust for the corporation. After this, the
house on the land needing repairs, A., who did not know of the sale and supposed
that he still held the equity of redemption, applied to the corporation to make an
arrangement for the repairs, and was referred to B., and an agreement was made
between A. and B. by which A. should make the repairs, and when so made the
corporation should take a mortgage for a certain sum on the land, and, while the
work was being done, the old mortgage should remain as it was. After the work
was done by A., he discovered the fact of the sale under the mortgage. *Held*, that
he could not maintain an action against B. for the cost of the work so done.

CONTRACT on an account annexed for money expended in
labor and materials on certain houses.

At the trial in the Superior .Court, before *Wilkinson*, J., the
plaintiff offered in evidence the report of an auditor, upon which
the judge ruled that the action could not be maintained, ordered
a verdict for the defendant, and allowed a bill of exceptions, the
material parts of which appear in the opinion.

*C. S. Lincoln*, for the plaintiff.

*S. Wells & F. L. Hayes*, for the defendant.

LORD, J. The defendant in this case, by the finding of the
auditor, held, upon a naked trust in favor of the John Hancock
Mutual Life Insurance Company, certain real estate, upon which
work was done by the plaintiff. He was the treasurer of the
company and had the general management of 'its financial af-
fairs. The plaintiff applied to the company to perform labor
upon such real estate. At the time of such application, the
plaintiff supposed that he himself was the owner of the equity
of redemption of the real estate, and that the company was the
mortgagee of the same. In fact, however, the mortgages held
by the company had been foreclosed by a sale of the estate, and
the deed had been made by the company to the defendant, who
was nominally the purchaser, but who had no interest in the
estate, and took the title upon a naked trust in favor of the com-
pany. When the plaintiff thus made application to the com-
pany, he in fact supposed that 'he labor which was to be done
was to enure to his own benefit. There existed at the time two

mortgages, one upon each of two several parcels of said estate, there being due upon each mortgage at the time of the fore-closure the sum of $3000. The work proposed was the raising of the house upon each parcel of the estate and putting in new foundations, which work was necessary to be done because of an order by the proper authorities of the city of Boston, for the reason that the houses in their then condition were unsafe, dangerous and a nuisance.

When the plaintiff thus applied to the John Hancock Mutual Life Insurance Company, his purpose was to raise the houses for his own benefit, but he desired the assistance of the company, supposing it to be the mortgagee, by means of an increased loan upon said houses respectively. He was referred to the defendant as the financial and business agent of the company, and through him an agreement was made with the company, that, upon the work being completed, the company would take a mortgage in the sum of $4000 upon each house, and that, till this was done, the mortgages should remain as they were. This agreement thus made by the defendant, in behalf of the company, was approved by its finance committee. The plaintiff performed the work, the company having, during its performance, advanced the sum of $1000. The plaintiff then bargained with one Murphy for the sale of one of the houses for the sum of $6000, of which $2000 was to be paid to him and the remaining $4000 was to be secured by mortgage to said company by the purchaser. The plaintiff made a deed to the purchaser, the grantee to make a mortgage to the company for $4000.

At this stage of the transaction, the plaintiff discovered the actual condition of the title; and the plaintiff and Murphy " saw the defendant at the office of the company and informed him of the sale to Murphy and that Murphy wanted his deed, and was ready to make and execute a mortgage of $4000 on the premises." " The defendant said that upon that house there was due to the company the sum of $4281.93, which would make $281.93 to be paid to the company. To this the plaintiff made some objection. The objection, however, was not insisted upon, and the defendant gave a deed of that house to Murphy; Murphy gave a mortgage thereof to the company for $4000, and out of the balance of the purchase money paid to the company said sum of $281.93 paving the remainder to the plaintiff."

After this transaction was completed, " the plaintiff sold the other house to one Walsh, who agreed to pay $6000, by giving a mortgage of $4000 to the company and paying the balance to the plaintiff." Walsh and the plaintiff then applied to the defendant for a conveyance of that house to Walsh, he offering to give the said mortgage to the company. The defendant informed them that there was due to the company $4224.90, and that upon the payment to the company of $224.90, he would make the deed. The plaintiff objected to the payment of this sum of $224.90. The auditor finds that the plaintiff contended that the company had " charged him certain items which they had no right to charge ; " and the auditor finds that in fact they " had charged him in the vicinity of $50, which was not properly charged." The auditor further finds that neither the plaintiff nor Walsh ever " offered to pay to the company said sum of $224.90, or any part of it." Walsh frequently applied to the defendant for a deed, but he never gave it ; but did notify the plaintiff that he should sell it if the matter was not fixed up and the excess paid. "After waiting a time," the defendant sold and conveyed the same to one Meinrath. The plaintiff then presented to the defendant the claim now in suit as a claim against the company.

The auditor finds that the defendant " personally had no interest in the premises; that he bid off both houses at said mortgagee's sale for the said company and took the deeds and held them for the said company, and was ready and willing at all times to convey them as the company should direct."

Upon this state of facts, the only question which we are called upon to decide is, whether the plaintiff can maintain an action against the defendant upon an account annexed for the work and labor performed, and materials furnished and cash expended in the performance of such work. And we are clearly of opinion that he cannot. The defendant made no personal contract with the plaintiff ; and the plaintiff understood that he made none. There was a mistake of fact in relation to the title on the part of the plaintiff. The defendant made no declaration in relation to the title. If it be assumed that the parties had not in law equal knowledge respecting the title, and if it be assumed further that it was the defendant's duty to disclose the facts

in relation to it, he was bound to disclose only the exact truth. That exact truth was that the legal title was in himself, but that the entire beneficial estate was in the John Hancock Mutual Life Insurance Company, and his own estate was a naked trust. We are not aware of any case in which the law implies a promise on the part of a defendant for labor done by the plaintiff, except when the defendant has received a benefit from the labor.

We do not deem it necessary to decide whether the plaintiff might have claimed a lien upon the estate for the labor, &c., though it is difficult to perceive a good reason why he might not, when the labor is performed for the benefit of the party who had all the beneficial interest in the estate, the agent of such party holding the legal title ; and this suggestion is made merely in consequence of the argument of the plaintiff's counsel that the defendant by his act prevented the plaintiff from acquiring a lien. If it were so, it would simply be proof that a fraud of the defendant operated to the injury of the plaintiff, the remedy for which would be in tort and not in contract.

There are, however, other intrinsic difficulties in the case. The work was not done under a contract to pay for it in money. The plaintiff performed the labor under a contract with the insurance company, and his compensation was to be the enhanced value of the real estate. If the party with whom he made the contract did not do what he agreed to do, either because it was not in his power to do it, or refused to do it because he had a right to avail himself of the fact that the contract was not in writing and therefore not binding upon him, he would, under the familiar decisions of this court, be liable to pay for the services, &c., in money. It is true that, as a condition of performance, the company demanded something " in the vicinity of fifty dollars," which it had not the right to claim according to the finding of the auditor. It is, however, to be remembered that the insurance company has not been heard upon that question and when heard, it may appear that the company has ever been willing and ready to perform all it agreed to perform.

*Exceptions overruled.*